IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GLEN ELLYN PHARMACY, INC., on behalf of itself and the classes defined below, Plaintiff, v. QUINTILES CONSULTING, INC., WYETH (INC.), and JOHN DOES 1-10, Defendants. | 09 C 3323 Judge Hart |

## FIRST AMENDED COMPLAINT – CLASS ACTION

## MATTERS COMMON TO MULTIPLE COUNTS

### INTRODUCTION

1.     Plaintiff Glen Ellyn Pharmacy, Inc., brings this action to secure redress for the actions of defendants Quintiles Consulting, Inc. ["Quintiles"], and Wyeth (Inc.) ["Wyeth"] in sending or causing the sending of unsolicited advertisements to telephone facsimile machines in violation of the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA"), the Illinois Consumer Fraud Act, 815 ILCS 505/2 ("ICFA"), and the common law.

2.     The TCPA expressly prohibits unsolicited fax advertising. Unsolicited fax advertising damages the recipients. The recipient is deprived of its paper and ink or toner and the use of its fax machine. The recipient also wastes valuable time it would have spent on something else. Unsolicited faxes prevent fax machines from receiving and sending authorized faxes, cause wear and tear on fax machines, and require labor to attempt to identify the source and purpose of the unsolicited faxes.

### PARTIES

3.     Plaintiff Glen Ellyn Pharmacy, Inc., is a corporation with offices at 486 Roosevelt Rd., Glen Ellyn, IL 60137, where it maintains telephone facsimile equipment.

1

4. Defendant Quintiles Consulting, Inc., is a North Carolina corporation. Its registered agent and office is CT Corporation System, 208 S. LaSalle Street, Suite 814, Chicago, Illinois 60604.

5. Quintiles states on its Web site that it "helps pharmaceutical, biotechnology and medical device companies develop and market innovative therapies."

6. Defendant Wyeth is a Delaware corporation with its principal place of business located at Five Giralda Farms, Madison, NJ 07940. It does business in Illinois. Its registered agent and office are Prentice Hall Corporation, 33 N. LaSalle St., Chicago, IL 60602.

7. Defendant Wyeth is engaged in the manufacture and sale of pharmaceutical products.

8. Defendants John Does 1-10 are other natural or artificial persons that were involved in the sending of the facsimile advertisements described below. Plaintiff does not know who they are.

## JURISDICTION AND VENUE

9. This Court has jurisdiction under 28 U.S.C. §§1331 and 1367. Brill v. Countrywide Home Loans, Inc., 427 F.3d 446 (7th Cir. 2005).

10. Personal jurisdiction exists under 735 ILCS 5/2-209, in that defendants:

    a. Have committed tortious acts in Illinois by causing the transmission of unlawful communications into the state.

    b. Have transacted or done business in Illinois.

11. Venue in this District is proper for the same reason.

## FACTS

12. On April 13, 2009, plaintiff Glen Ellyn Pharmacy, Inc., received the unsolicited fax advertisement attached as Exhibit A on its facsimile machine.

13. Discovery may reveal the transmission of additional faxes as well.

14. On information and belief, the faxes were sent by or at the direction of

2

Quintiles pursuant to an agreement between Quintiles and Wyeth for the promotion of Wyeth products.

15. The fax promoted a meeting on the subject of "How do we prolong graft function and improve cardiovascular even-free survival in the kidney transplant recipient?" The matters to be discussed included "combination immunosuppressive regimens to maintain enduring graft function." (Exhibit A)

16. Defendant Wyeth manufactures, markets and sells immunosuppressive regimens for the purpose of preventing organ rejection following kidney transplantation. The regimens include Rapamune (R) sirolimus in tablets and oral solutions.

17. On information and belief, the fax and seminar were paid for by Wyeth.

18. The purpose of the fax was to advance the economic interests of Wyeth in selling immunosuppressive regimens to maintain enduring graft function following kidney transplantation.

19. Wyeth sponsors presentations and seminars which are likely to create or maintain demand for its products.

20. On information and belief, the preparation and transmission of the fax was paid for from a promotional budget of Wyeth.

21. Quintiles represents to pharmaceutical manufacturers such as Wyeth that seminars such as those announced in the fax (Exhibit A) are part of a promotional program. Quintiles acquired a company that conducted seminars for medical and pharmacy professionals in 1999. Its July 12, 1999 press release announcing the acquisition, which is still on Quintiles' Web site, states that "Quintiles Transnational Corp. (Nasdaq: QTRN) today announced the acquisition of New Jersey-based Medcom, Inc., a leading provider of physician meetings and educational events to help pharmaceutical companies raise awareness of their products among healthcare professionals. . . . The company will operate as Innovex-Medcom Marketing Group, a part of Quintiles' Innovex subsidiary, the world's leading provider of commercial solutions to the

pharmaceutical industry. The group will relocate from Paramus to Innovex Inc.'s main offices in Parsippany, New Jersey, about 30 miles away." The services to be provided included "conducting events where healthcare professionals discuss and learn about prescription pharmaceuticals . . . ."

22. Plaintiff had no prior relationship with defendants and had not authorized the sending of fax advertisements to plaintiff.

23. On information and belief, the faxes attached hereto were sent as part of a mass broadcasting of faxes.

24. The faxes have a "remove" number at the bottom that is associated with the mass broadcasting of advertising faxes.

25. On information and belief, defendants have transmitted similar unsolicited fax advertisements to at least 40 other persons in Illinois.

26. There is no reasonable means for plaintiff or other recipients of defendants' unsolicited advertising faxes to avoid receiving illegal faxes. Fax machines must be left on and ready to receive the urgent communications authorized by their owners.

27. Furthermore, the "opt out notice" required by the TCPA even when faxes are sent with consent or pursuant to an established business relationship was not provided in the faxes at issue.

### COUNT I – TCPA

28. Plaintiff incorporates ¶¶ 1-27.

29. The TCPA makes unlawful the "use of any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile machine ..." 47 U.S.C. §227(b)(1)(C).

30. The TCPA, 47 U.S.C. §227(b)(3), provides:

**Private right of action.**

**A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State–**

4

> **(A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,**
>
> **(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or**
>
> **(C) both such actions.**
>
> **If the Court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under the subparagraph (B) of this paragraph.**

31. Plaintiff and each class member suffered damages as a result of receipt of the unsolicited faxes, in the form of paper and ink or toner consumed as a result. Furthermore, plaintiff's statutory right of privacy was invaded.

32. Plaintiff and each class member is entitled to statutory damages.

33. Defendants violated the TCPA even if their actions were only negligent.

34. Defendants should be enjoined from committing similar violations in the future.

## CLASS ALLEGATIONS

35. Pursuant to Fed. R.Civ. P. 23(a) and (b)(3), plaintiff brings this claim on behalf of a class, consisting of (a) all persons (b) who, on or after April 24, 2005 (four years prior to the filing of this action, 28 U.S.C. §1658), and on or before May 16, 2009 (20 days following the filing of this action), (c) were sent faxes by or on behalf of defendants Quintiles or Wyeth promoting seminars on the subject of immunosuppressive regimens for kidney transplants (d) and who were not provided an "opt out" notice as described in 47 U.S.C. §227.

36. The class is so numerous that joinder of all members is impractical. Plaintiff alleges on information and belief that there are more than 40 members of the class.

37. There are questions of law and fact common to the class that predominate over any questions affecting only individual class members. The predominant common questions include:

  a. Whether defendants engaged in a pattern of sending unsolicited fax advertisements;

  b. The manner in which defendants compiled or obtained their list of fax numbers;

  c. Whether defendants thereby violated the TCPA;

  d. Whether defendants thereby engaged in unfair acts and practices, in violation of the ICFA.

  e. Whether defendants thereby converted the property of plaintiff.

  38. Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither plaintiff nor plaintiff's counsel have any interests which might cause them not to vigorously pursue this action.

  39. Plaintiff's claims are typical of the claims of the class members. All are based on the same legal and factual theories.

  40. A class action is a superior method for the fair and efficient adjudication of this controversy. The interest of class members in individually controlling the prosecution of separate claims against defendants is small because it is not economically feasible to bring individual actions.

  41. Several courts have certified class actions under the TCPA. Sadowski v. Med1 Online, LLC, 07 C 2973, 2008 U.S. Dist. LEXIS 41766 (N.D.Ill., May 27, 2008); Hinman v. M & M Rental Ctr., 06 C 1156, 2008 U.S. Dist. LEXIS 27835 (N.D.Ill., April 7, 2008); Kavu, Inc. v. Omnipak Corp., 246 F.R.D. 642 (W.D.Wash. 2007); Gortho, Ltd., v. Websolv, 03 CH 15615 (Cir. Ct. Cook Co., March 6, 2008); Travel 100 Group, Inc. v. Empire Cooler Service, Inc., 03 CH 14510, 2004 WL 3105679 (Cook Co. Cir. Ct., Oct. 19, 2004); Rawson v. C.P. Partners LLC, 03 CH 14510 (Cook Co. Cir. Ct., Sept. 30, 2005); Lampkin v. GGH, Inc., 146 P.3d 847 (Okla. Ct. App. 2006); Display South, Inc. v. Express Computer Supply, Inc., 961

So.2d 451, 455 (La. App. 1st Cir. 2007); Display South, Inc. v. Graphics House Sports Promotions, Inc., 992 So. 2d 510 (La. App. 1st Cir. 2008); ESI Ergonomic Solutions, LLC v. United Artists Theatre Circuit, Inc., 203 Ariz. (App.) 94, 50 P.3d 844 (2002); Core Funding Group, LLC v. Young, 792 N.E.2d 547 (Ind.App. 2003); Nicholson v. Hooters of Augusta, Inc., 245 Ga.App. 363, 537 S.E.2d 468 (2000) (private class actions); see State of Texas v. American Blast Fax, Inc., 164 F. Supp. 2d 892 (W.D. Tex. 2001) (state enforcement action).

    42. Management of this class action is likely to present significantly fewer difficulties that those presented in many class actions, e.g. for securities fraud.

    WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class and against defendants for:

    a. Actual damages;

    b. Statutory damages;

    c. An injunction against the further transmission of unsolicited fax advertising;

    d. Costs of suit;

    e. Such other or further relief as the Court deems just and proper.

### COUNT II – ILLINOIS CONSUMER FRAUD ACT

    43. Plaintiff incorporates ¶¶ 1-27.

    44. Defendants engaged in unfair acts and practices, in violation of ICFA § 2, 815 ILCS 505/2, by sending unsolicited fax advertising to plaintiff and others.

    45. Unsolicited fax advertising is contrary to the TCPA and also Illinois public policy, as set forth in 720 ILCS 5/26-3(b), which makes it a petty offense to transmit unsolicited fax advertisements to Illinois residents.

    46. Defendants engaged in an unfair practice by engaging in conduct that is contrary to public policy, unscrupulous, and caused injury to recipients of their advertising.

    47. Plaintiff and each class member suffered damages as a result of receipt of

the unsolicited faxes, in the form of paper and ink or toner consumed as a result.

48. Defendants engaged in such conduct in the course of trade and commerce.

49. Defendants' conduct caused recipients of their advertising to bear the cost thereof. This gave defendants an unfair competitive advantage over businesses that advertise lawfully, such as by direct mail. For example, an advertising campaign targeting one million recipients would cost $500,000 if sent by U.S. mail but only $20,000 if done by fax broadcasting. The reason is that instead of spending $480,000 on printing and mailing his ad, the fax broadcaster misappropriates the recipients' paper and ink. "Receiving a junk fax is like getting junk mail with the postage due". Remarks of Cong. Edward Markey, 135 Cong Rec E 2549, Tuesday, July 18, 1989, 101st Cong. 1st Sess.

50. Defendants' shifting of advertising costs to plaintiff and the class members in this manner makes such practice unfair. In addition, defendants' conduct was contrary to public policy, as established by the TCPA and Illinois statutory and common law.

51. Defendants should be enjoined from committing similar violations in the future.

## CLASS ALLEGATIONS

52. Pursuant to Fed. R.Civ. P. 23(a) and (b)(3), plaintiff brings this claim on behalf of a class, consisting of (a) all persons with Illinois fax numbers (b) who, on or after April 24, 2006 (3 years prior to the filing of this action), and on or before May 16, 2009 (20 days following the filing of this action), (c) were sent faxes by or on behalf of defendants Quintiles or Wyeth promoting seminars on the subject of immunosuppressive regimens for kidney transplants (d) and who were not provided an "opt out" notice as described in 47 U.S.C. §227.

53. The class is so numerous that joinder of all members is impractical. Plaintiff alleges on information and belief that there are more than 40 members of the class.

54. There are questions of law and fact common to the class that predominate over any questions affecting only individual class members. The predominant common

questions include:

    a. Whether defendants engaged in a pattern of sending unsolicited fax advertisements;

    b. Whether defendants thereby violated the TCPA;

    c. Whether defendants thereby engaged in unfair acts and practices, in violation of the ICFA.

    d. Whether defendants thereby converted the property of plaintiff.

55. Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither plaintiff nor plaintiff's counsel have any interests which might cause them not to vigorously pursue this action.

56. Plaintiff's claims are typical of the claims of the class members. All are based on the same legal and factual theories.

57. A class action is a superior method for the fair and efficient adjudication of this controversy. The interest of class members in individually controlling the prosecution of separate claims against defendants is small because it is not economically feasible to bring individual actions.

58. Management of this class action is likely to present significantly fewer difficulties that those presented in many class actions, e.g. for securities fraud.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class and against defendants for:

    a. Appropriate damages;

    b. An injunction against the further transmission of unsolicited fax advertising;

    c. Attorney's fees, litigation expenses and costs of suit;

    d. Such other or further relief as the Court deems just and proper.

## COUNT III – CONVERSION

59. Plaintiff incorporates ¶¶ 1-27.

60. By sending plaintiff and the class members unsolicited faxes, defendants converted to their own use ink or toner and paper belonging to plaintiff and the class members.

61. Immediately prior to the sending of the unsolicited faxes, plaintiff and the class members owned and had an unqualified and immediate right to the possession of the paper and ink or toner used to print the faxes.

62. By sending the unsolicited faxes, defendants appropriated to their own use the paper and ink or toner used to print the faxes and used them in such manner as to make them unusable. Such appropriation was wrongful and without authorization.

63. Defendants knew or should have known that such appropriation of the paper and ink or toner was wrongful and without authorization.

64. Plaintiff and the class members were deprived of the paper and ink or toner, which could no longer be used for any other purpose. Plaintiff and each class member thereby suffered damages as a result of receipt of the unsolicited faxes.

65. Defendants should be enjoined from committing similar violations in the future.

## CLASS ALLEGATIONS

66. Pursuant to Fed. R.Civ. P. 23(a) and (b)(3), plaintiff brings this claim on behalf of a class, consisting of (a) all persons (b) who, on or after April 24, 2004 (five years prior to the filing of this action), and on or before May 16, 2009 (20 days following the filing of this action), (c) were sent faxes by or on behalf of defendants Quintiles or Wyeth promoting seminars on the subject of immunosuppressive regimens for kidney transplants (d) and who were not provided an "opt out" notice as described in 47 U.S.C. §227.

67. The class is so numerous that joinder of all members is impractical. Plaintiff alleges on information and belief that there are more than 40 members of the class.

10

68. There are questions of law and fact common to the class that predominate over any questions affecting only individual class members. The predominant common questions include:

    a. Whether defendants engaged in a pattern of sending unsolicited fax advertisements;

    b. Whether defendants thereby violated the TCPA;

    c. Whether defendants thereby committed the tort of conversion;

    d. Whether defendants thereby engaged in unfair acts and practices, in violation of the ICFA.

    e. Whether defendants thereby converted the property of plaintiff.

69. Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither plaintiff nor plaintiff's counsel have any interests which might cause them not to vigorously pursue this action.

70. Plaintiff's claims are typical of the claims of the class members. All are based on the same legal and factual theories.

71. A class action is a superior method for the fair and efficient adjudication of this controversy. The interest of class members in individually controlling the prosecution of separate claims against defendants is small because it is not economically feasible to bring individual actions.

72. Management of this class action is likely to present significantly fewer difficulties that those presented in many class actions, e.g. for securities fraud.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class and against defendants for:

    a. Appropriate damages;

    b. An injunction against the further transmission of unsolicited fax

advertising;

   c.  Costs of suit;

   d.  Such other or further relief as the Court deems just and proper.

*/s/ Daniel A. Edelman*

Daniel A. Edelman
Michelle R. Teggelaar
Julie Clark
Heather A. Kolbus
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, 18th floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

T:\22843\Pleading\1st Amended Complaint_Pleading.wpd

## NOTICE OF LIEN AND ASSIGNMENT

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

_____
Daniel A. Edelman

Daniel A. Edelman
EDELMAN, COMBS, LATTURNER
    & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

## **CERTIFICATE OF SERVICE**

      I, Julie Clark, certify that on June 18, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Thomas J Hayes
Bart Thomas Murphy
ICE MILLER
2300 Cabot Drive
Suite 455
Lisle, IL 60532
thomas.hayes@icemiller.com
bart.murphy@icemiller.com


                                                   /s/Julie Clark
                                                   Julie Clark



Daniel A. Edelman
Julie Clark
Heather A. Kolbus
EDELMAN, COMBS, LATTURNER
     & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)